IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL DELEON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 08 C 2143 |
| | ) |
| | ) Judge Virginia M. Kendall |
| DONALD HULICK, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Miguel DeLeon ("DeLeon") petitions the Court for writ of habeas corpus pursuant

to 28 U.S.C. § 2254.[1]  For the following reasons, the Court denies DeLeon's habeas petition.

## BACKGROUND

The Court adopts the underlying facts set forth by the Illinois Appellate Court in *People v.*

*DeLeon*, No. 1-99-0028 (Ill. App. Ct. Sept. 15, 2000) (unpublished).  28 U.S.C. § 2254(e)(1); *see*

*also Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).

## I.      Factual Background

On April 4, 2007, DeLeon met fellow Imperial Gangsters Elvis Burleson ("Burleson"), Allen

Montgomery ("Montgomery"), and John Merced ("Merced") in Franklin Park, Illinois.  Montgomery

and Burleson saw a red Mustang turn into "their" area of Franklin Park, driven by Jose Sanchez

("Sanchez").  Concluding that Sanchez was a member of a rival gang, the Latin Kings, Montgomery

ran to a fence near Schiller Boulevard, followed by DeLeon.  Meanwhile, Burleson intercepted

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Donald Hulick, the current warden of Menard Correctional Center, as the Respondent.

Sanchez on Schiller. Burleson verbally confronted Sanchez about his gang affiliation and punched him in the face. At trial, Sanchez testified that he drove away after being punched and, as he accelerated, he heard a gunshot, saw a gunman's shadow, and felt a burning sensation in his chest. When he reached a service station, he discovered a bullet had gone through his body.

Montgomery testified that, when he arrived at the fence, he saw an ice cream truck parked a few feet away near Schiller Boulevard and children standing near it. He saw Burleson verbally confront Sanchez and punch Sanchez in the face. He then saw DeLeon shoot at the car using a "double-armed position." As the car sped away, several more shots were fired, and Montgomery saw a girl lying in the grass in front of the ice cream truck and a wounded boy. The wounded boy was three-year-old Noe Ocampo ("Ocampo"); the dead girl was Juana Nieto ("Juana"). After the shooting, Montgomery left the area and claimed that he never saw or spoke to DeLeon again. Over the next few days, he talked with police and identified DeLeon as the shooter and Burleson as the person who punched Sanchez.

Anabel Nieto ("Anabel"), a 10-year-old girl, testified that on April 4, 1997, she and her sisters went across the street to buy ice cream from the truck. As she walked towards the truck, she saw a white man and a black man standing next to each other at the fence on Schiller. Anabel further testified that, when a red car came by, the two men jumped over the fence and DeLeon ran up to the driver's side of the car. Gunshots rang out, and she saw DeLeon shooting at the moving car with his arms outstretched. She then saw her seven-year-old sister, Juana, lying on the ground. Within an hour of the shooting, Anabel spoke with police, and a few days later she viewed a lineup in which she identified DeLeon as the shooter. On cross-examination, she recalled telling police officers that the assailants were white and black and that the shooter was Hispanic. Franklin Park Investigator

Norm Carli ("Carli"), testified that Anabel was able to describe the features of the black man she had seen, but that she could only describe the white man as having darker skin than Carli.

Burleson testified that he saw DeLeon shooting more than five rounds at the Mustang, and that he told police that DeLeon was the shooter after he was arrested for his role in the incident. He acknowledged writing two letters while in prison recanting those statements given to the police, but explained that he had made those false statements in the letters because he was afraid that DeLeon would have him killed in prison. Burleson also testified that his statements to the police were fully accurate. Burleson acknowledged that the state of Illinois had dropped murder and attempted murder charges against him and had allowed him to plead guilty to aggravated battery in exchange for his truthful testimony in this case. A Franklin Park paramedic testified that he responded to the shooting and saw Omar O'Malley ("O'Malley"), the ice cream truck driver, get out of the truck with a gunshot graze wound.

At trial, the defense called three witnesses. Detective Carli testified that Anabel first told him that there were three male Hispanics involved in the incident and described their heights and builds. Anabel was able to provide details for a composite sketch of the black male, but not for the Hispanic male. Carmen Merced, the mother of DeLeon and John Merced, testified that her sons were at home during the shooting. John Merced similarly testified that he and DeLeon were at home the entire day, and named Burleson as the leader of the Imperial Gangsters and Montgomery as the chief enforcer. DeLeon declined to testify after acknowledging that he had considered this matter with his family and his attorney.

## II. Procedural Background

On November 4, 1998, after a bench trial in the Circuit Court of Cook County, the trial court found DeLeon guilty of the murder of Juana and the attempted murder of Sanchez. (Resp.'s Rule 5 Exs., Ex. A.) The court, however, granted DeLeon's motion for directed verdicts on the attempted murder and aggravated battery counts regarding Ocampo and O'Malley. *See id.* The trial judge sentenced DeLeon to mandatory life imprisonment for the first-degree murder conviction and a consecutive thirty-year prison term for the attempted first-degree murder conviction. *See id.* On direct appeal, DeLeon argued that the evidence was insufficient to support his convictions. (Resp.'s Rule 5 Exs., Exs. A, B, C.) After the Illinois appellate court affirmed DeLeon's conviction and sentence on September 15, 2000, DeLeon did not file a petition for leave to appeal ("PLA") to the Supreme Court of Illinois, nor did he file a petition for a writ of certiorari to the United States Supreme Court. (Doc. 14, Amd. Habeas Pet. ("Habeas Pet."), at 2.)

On April 23, 2001, DeLeon filed a petition for postconviction relief pursuant to 725 ILCS 5/122-1, *et seq.*, challenging the constitutionality of his mandatory life sentence on the grounds that the Public Act authorizing it, Pub. Act 89-203 (eff. July 21, 1995), violated the single-subject rule of the Illinois Constitution. (Resp.'s Rule 5 Exs., Ex. D.) The trial court summarily dismissed the petition, but on appeal the state conceded error and the Illinois appellate court vacated DeLeon's life sentence and remanded for resentencing. (Resp.'s Rule 5 Exs., Ex. E.)

At resentencing, the court imposed an extended term of imprisonment of 100 years for the murder conviction and a consecutive thirty-year sentence for the attempted murder conviction. DeLeon's counsel filed a motion to reconsider the sentence imposed at resentencing. The motion to reconsider stated: "Counsel for defendant maintains, that the Court did not, at the time of trial,

specifically find that the age of the victim was proven beyond a reasonable doubt, while acknowledging that counsel is working without the benefit of a transcript of the Court's original finding." *People v. DeLeon*, 882 N.E.2d 999, 1007 (Ill. 2008). The resentencing court denied the motion to reconsider.

DeLeon then appealed his new sentence, arguing that: (1) he was denied effective assistance of counsel at resentencing because his sentencing attorney failed to obtain trial transcripts and failed to contest the imposition of consecutive sentences by arguing that Sanchez's gunshot wound did not constitute a "severe bodily injury" as defined under Illinois law; (2) the trial court erred in denying defense counsel access to any mitigating evidence contained in DeLeon's Illinois Department of Corrections ("IDOC") records; (3) the trial court erred in imposing consecutive sentences because Sanchez did not suffer a severe bodily injury; (4) his sentence was excessive in light of his rehabilitative potential; and (5) his mittimus should be corrected to reflect that one count of first-degree murder merged into another. (Resp.'s Rule 5 Exs., Exs. I, J, K.) On September 29, 2006, the Illinois appellate court affirmed DeLeon's convictions and sentences, but directed the Clerk of the Circuit Court of Cook County to amend the mittimus to reflect a single murder conviction. (Resp.'s Rule 5 Exs., Ex. H.) On October 23, 2006, the Illinois appellate court denied DeLeon's subsequent petition for rehearing. (Resp.'s Rule 5 Exs., Exs. L, M.)

DeLeon filed a PLA to the Supreme Court of Illinois, which was granted on January 24, 2007. (Resp.'s Rule 5 Exs., Ex. O.) The Supreme Court of Illinois affirmed on January 25, 2008, rejecting DeLeon's contentions that: (1) his resentencing counsel was ineffective because he neither obtained nor reviewed the trial transcripts prior to the resentencing hearing, failed to correct the trial court's mistaken belief that an extended-term sentence was mandatory, failed to argue mitigating

factors at sentencing, failed to argue that Sanchez did not suffer a severe bodily injury and that consecutive sentences were therefore impermissible, and failed to correct the trial court's misunderstanding that DeLeon was responsible for wounding Ocampo and O'Malley; (2) the trial court erred by not allowing his counsel to examine his IDOC records; and (3) the trial court erred in imposing consecutive sentences because Sanchez's gunshot wound was not a severe bodily injury. (Resp.'s Rule 5 Exs., Exs. N, O, P, Q.)

DeLeon then filed a successive *pro se* postconviction petition on July 30, 2008, arguing that: (1) he was denied effective assistance of trial and appellate counsel in several respects; (2) his conviction and sentence were void because Sanchez did not suffer a severe bodily injury; and (3) his sentence was unconstitutional because the murder victim's age was both an element of first-degree murder and used as an aggravating factor for his sentence. (Resp.'s Rule 5 Exs., Ex. S.) The trial court dismissed the petition on August 15, 2008. (Resp.'s Rule 5 Exs., Ex. R.) DeLeon appealed the dismissal, and his appointed counsel on appeal moved to withdraw pursuant to *Pennsylvania v. Finley*. 481 U.S. 551 (1987). In his *Finley* motion, DeLeon's counsel argued that DeLeon procedurally defaulted his ineffective assistance and sentencing claims by not raising them in his first postconviction petition. Moreover, DeLeon's counsel also argued that DeLeon's sentencing double-enhancement claim failed because age was not an element of his murder conviction and was used only at resentencing. (Resp.'s Rule 5 Exs., Ex. U.) On May 18, 2010, the Illinois appellate court granted counsel's motion to withdraw and affirmed the dismissal of the successive postconviction petition. (Resp.'s Rule 5 Exs., Ex. T.) DeLeon then filed a PLA to the Supreme Court of Illinois, which was denied on September 29, 2010. (Resp.'s Rule 5 Exs., Exs. W, X.)

In April 2008, prior to filing his successive postconviction petition, DeLeon filed a petition

for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. In May 2008, this Court stayed his habeas proceedings pending his exhaustion of his state court remedies. (Doc. 8.) On October 7, 2010, DeLeon filed a motion to lift the stay following the Supreme Court of Illinois's September 29, 2010 denial of his PLA. DeLeon also filed a *pro se* amended habeas corpus petition pursuant to § 2254. The Court granted DeLeon's motion to lift the stay on October 14, 2010. (Doc. 13.)

In his present habeas petition, DeLeon asserts the following claims: (1) the evidence at trial was insufficient to prove guilt beyond a reasonable doubt; (2) counsel at resentencing was ineffective because he failed to obtain and read the trial transcripts, failed to make mitigation arguments, failed to correct the trial court's misunderstanding of the facts, and failed to argue that DeLeon was ineligible for consecutive sentencing because Sanchez did not suffer a severe bodily injury; (3) the trial court's in camera review of DeLeon's IDOC records and failure to relinquish them to defense counsel resulted in a denial of his Sixth and Fourteenth Amendment rights; (4) trial counsel was ineffective because he advised DeLeon not to testify at trial, failed to argue that DeLeon's enhanced sentence was unconstitutional because the victim's age was both an element of first-degree murder and a statutory aggravating factor for his sentence, and failed to argue that DeLeon was ineligible for consecutive sentencing because Sanchez did not suffer a severe bodily injury; (5) appellate counsel was ineffective because he failed to raise the ineffectiveness of trial counsel on appeal; (6) his consecutive sentences were improper because Sanchez did not suffer a severe bodily injury; and (7) his enhanced sentence was unconstitutional because the victim's age was both an element of first-degree murder and a statutory aggravating factor for his sentence and the resentencing court's consideration of the victim's age to enhance his sentence was invalid because her age was not found by the finder of fact. (Habeas Pet., at 5–6.)

7

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000). Under the "contrary to" prong, a habeas petitioner must demonstrate that the state court applied an incorrect legal test to the facts, or confronted a set of facts materially indistinguishable from a relevant Supreme Court precedent yet arrived at an opposite result. *See Williams*, 529 U.S. at 405–06; *Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003).

Under the "unreasonable application" prong, "[a] state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 407). Under this deferential standard, "a federal habeas court may not issue the writ simply because . . . the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. Thus, under AEDPA, a habeas petitioner must show that the state court's application of federal law was both incorrect and unreasonable—that is, "lying well outside the boundaries of permissible differences of opinion." *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008) (internal quotations and citation omitted).

Before bringing a habeas claim in federal court, a petitioner must exhaust the remedies available to him in state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Specifically, habeas petitioners must give state courts a full opportunity to resolve any constitutional issues by

invoking one complete round of the state's established appellate review process. *Id.* at 845; *see also Mahaffey v. Schomig*, 294 F.3d 907, 914 (7th Cir. 2002). Illinois requires that a petitioner directly appeal to the Illinois appellate court and, if the conviction is affirmed, present his claim in a PLA to the Supreme Court of Illinois. *See id*. at 845; *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

When a petitioner has "already pursued his state court remedies and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief, . . . but rather the separate but related doctrine of procedural default." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). The procedural default doctrine ordinarily will preclude a federal court from reaching the merits of a habeas petition when: (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law grounds; or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *See id*.; *see also Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). An independent and adequate state-law ground may be based either upon substantive state law or upon a violation of state procedural rules. *See Walker v. Martin*, 131 S. Ct. 1120 (2011); *see also Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993) ("For a state procedural ground to bar review, the state court actually must have relied upon the procedural bar as an independent basis for its disposition of the case.").

There are, however, two exceptions to the procedural default doctrine. A petitioner can excuse default by showing either: (1) cause for the default and prejudice arising from failure to review the claims; or (2) that failure to review the claims on procedural grounds would result in a fundamental miscarriage of justice. *See Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999);

*Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996). The "fundamental miscarriage of justice" is narrow in scope and requires a claim that the defendant be actually innocent of the crime that he has been convicted of. *See Schlup v. Delo*, 513 U.S. 298, 327-328 (1995) (petitioner must demonstrate that, in light of all of the evidence, "it is more likely than not that no reasonable juror would have convicted him.") (internal quotations and citation omitted).

## DISCUSSION

I.     **Insufficiency of Evidence**

First, DeLeon claims that the trial court erred by convicting him of first-degree murder and attempted first-degree murder on insufficient evidence. This claim was raised on his direct appeal to the Illinois appellate court, which rejected this argument on September 15, 2000. (Resp.'s Rule 5 Exs., Ex. A.) DeLeon subsequently failed to apply for a PLA to the Supreme Court of Illinois, and thus failed to exhaust this claim. (Habeas Pet., at 2.) "Failure to exhaust available state court remedies constitutes a procedural default." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). Although DeLeon could have excused this default by alleging cause and prejudice or a fundamental miscarriage of justice, he fails to do so.[2] *See Howard*, 185 F.3d at 726.

Even if this claim was not procedurally defaulted, it is meritless. DeLeon argues that Montgomery and Burleson should not have been believed, given their personal interests in cooperating with the prosecution. He also argues that his two alibi witnesses should have been credited, while Anabel's identification of him in the lineup should not have been. On habeas review, this Court will reverse the trial court's verdict based on the insufficiency of the evidence only if,

---

[2] DeLeon at times claims that he is suffering a miscarriage of justice but does not claim that he is actually innocent.

viewing the evidence in the light most favorable to the prosecution, the Court finds that "no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979); *see also Mason v. Godinez*, 47 F.3d 852, 857 (7th Cir. 1995).

The Illinois appellate court, the last state court to review this claim, applied this standard on review. *See DeLeon*, No. 1-99-0028 at 10. It found no cause for reversal because the trial court was "not obligated to accept [DeLeon's] alibi testimony over the positive identification made by the State's witnesses," especially "where the State's witnesses presented a cohesive chronology of events and consistently identified [DeLeon] as the person who fired the gun that killed Juana and attempted to kill Sanchez." *Id.* at 12. Furthermore, it found that the trial court had considered Burleson's and Montgomery's backgrounds, as well Burleson's plea agreement, before finding them both credible and their identifications reliable. *Id.* at 11. Since a rational trier of fact could have found proof of guilt beyond a reasonable doubt from this record, the Illinois appellate court ruling was neither contrary to nor an unreasonable application of federal law. *See Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."). Therefore, the Court denies DeLeon's first habeas claim.

## II.     Ineffective Assistance of Counsel at Resentencing

Second, DeLeon claims that his appointed counsel at resentencing was ineffective in several respects. Specifically, he argues that his resentencing counsel failed to obtain and read trial transcripts, failed to make mitigation arguments at resentencing, failed to correct the trial court's misunderstanding of the facts, and failed to argue that DeLeon was ineligible for consecutive sentences because Sanchez did not suffer a severe bodily injury.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The clearly established federal law that applies to DeLeon's ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney's performance is ineffective if it falls "below an objective standard of reasonableness," such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. To receive habeas relief for a constitutionally ineffective assistance of counsel claim, DeLeon must show that the state court's application of the *Strickland* standard was unreasonable. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *see also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) ("*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard.").

### A.     Failure to Obtain and Read Transcripts

To argue that his resentencing counsel failed to obtain and read trial transcripts, DeLeon points to the following sentence which appeared in a motion to reconsider the sentence that DeLeon's counsel filed after the resentencing hearing: "Counsel for defendant maintains, that the Court did not, at the time of trial, specifically find that the age of the victim was proven beyond a reasonable doubt, *while acknowledging that counsel is working without the benefit of a transcript of the Court's original finding*." (emphasis added). DeLeon argues that this sentence signifies that his counsel never obtained any trial transcripts in preparation for his resentencing.

It is not the Court's responsibility to decide whether *Strickland*'s standards were met, but

rather "to decide whether the state courts were unreasonable when *they* concluded that [petitioner's] ineffective assistance claim could not prevail." *Kerr v. Thurmer*, 639 F.3d 315, 319 (7th Cir. 2011) (noting that where state courts correctly identified *Strickland*, the court need only decide "whether the state court's application of clearly established federal law was objectively unreasonable.") (citations omitted).

The Supreme Court of Illinois reasonably applied *Strickland* when it concluded that all that can be reasonably inferred from that sentence is that DeLeon's counsel was "working without the benefit of a transcript" at the time that he prepared the motion to reconsider, and not during his entire preparation for resentencing. *DeLeon*, 882 N.E.2d at 1007 (noting that DeLeon's counsel's "concession" about not having the trial transcripts on hand "appears exclusively in that motion, and nothing about it implicates counsel's performance at or before the resentencing hearing itself."). Although the Supreme Court of Illinois could not confirm that DeLeon's counsel actually read all of the trial transcripts, it "reiterate[d] that the record in no way supports [DeLeon's] repeated assertion that counsel failed to review the original trial record." *Id.* at 1008. Here, DeLeon has not submitted any affidavits along with his habeas petition to the contrary. Accordingly, the Supreme Court of Illinois reasonably concluded that DeLeon's argument was speculative and therefore insufficient to demonstrate the prejudice requirement of an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness claims . . . are subject to a general requirement that the defendant affirmatively prove prejudice."); *Magee v. Smith*, 403 F. App'x 84, 86 (7th Cir. 2010) ("The prejudice prong requires something beyond speculation . . . .").

Here, the Court finds the Supreme Court of Illinois's conclusion that DeLeon's reference to a speculative sentence, without more, does not affirmatively prove that DeLeon's counsel was

constitutionally ineffective, was a reasonable application of *Strickland*.

**B.      Failure to Make Mitigation Arguments at Resentencing**

DeLeon argues that his resentencing counsel was ineffective for failing to argue his youth, remorse, and good prison behavior as mitigating factors.  Both state courts reviewing this argument applied *Strickland* to this claim, and both found this claim to be contradicted by the record.  The Supreme Court of Illinois noted that DeLeon's claims that his counsel did not argue mitigating factors were "contradicted by the record," which showed "that counsel specifically argued [DeLeon's] remorse as a mitigating factor."  *DeLeon*, 888 N.E.2d at 1008.  Moreover, DeLeon personally expressed remorse and requested leniency at his resentencing.  *See id.*; *People v. DeLeon*, No. 1-04-2934 at 5 (Ill. App. Ct. Sept. 29, 2006) (unpublished) ("Defendant then exercised his right of allocution.  He said that he was sorry for what happened to Juana Nieto and that he never intended harm her.").

DeLeon again fails to include any affidavits from his counsel attesting to counsel's failure to raise these arguments in mitigation.  In addition, "[i]n announcing its decision, the court had also indicated that it had an opportunity to review . . . the [Pre-Sentence Investigation Report]."  *DeLeon*, 1-04-2934 at 5.  As DeLeon concedes in his habeas petition, the Pre-Sentence Investigation Report ("PSI") contained his age, his remorseful statements, and a record of his good prison behavior. (Habeas Pet., at 7.)  Thus, DeLeon cannot demonstrate prejudice because his counsel made arguments in mitigation and the sentencing judge considered those along with DeLeon's allocution and the information in the PSI.  Accordingly, the Court finds that the Supreme Court of Illinois reasonably applied *Strickland* in finding that DeLeon's counsel provided effective assistance by making mitigation arguments at resentencing.

### C.      Failure to Correct the Trial Court's Misunderstanding of the Facts

DeLeon argues that his resentencing counsel was ineffective for failing to correct the trial court's misunderstanding of the facts. Specifically, he argues that counsel failed to correct the trial court's belief that DeLeon actually injured Ocampo and O'Malley even though the trial court granted DeLeon's motions for directed verdicts on those two attempted murder and aggravated battery counts.

The Supreme Court of Illinois reasonably applied *Strickland* when it concluded that DeLeon's counsel had no legal basis to object at the resentencing hearing. Even though DeLeon had been acquitted of the attempted murders of Ocampo and O'Malley, "[c]onviction of a crime requires proof of guilt beyond a reasonable doubt, whereas Illinois law prescribes no burden of proof in sentencing." *Jackson v. Roth*, 24 F.3d 1002, 1004 (7th Cir. 1994). Therefore, "a finding in a sentencing hearing that the defendant committed another crime besides the one for which he was tried is entirely consistent . . . with the defendant's having been acquitted of the crime." *Id.*; *see also People v. Jackson*, 599 N.E.2d 926, 930 (Ill. 1992) ("[E]vidence of criminal conduct can be considered at sentencing even if the defendant previously had been acquitted of that conduct."). Accordingly, the trial court's belief that DeLeon did shoot and wound both Ocampo and O'Malley was legally consistent with DeLeon's two acquittals. Significantly, DeLeon cannot demonstrate that the result of the proceeding would have been different because the sentence he received was based on the murder of Juana and the attempted murder of Sanchez. As such, DeLeon's counsel had no misunderstanding to correct and his failure to raise this argument was not constitutionally ineffective.

### D.     Failure to Argue that Consecutive Sentences Were Impermissible

DeLeon argues that his resentencing counsel was ineffective because he failed to argue that Sanchez did not suffer a severe bodily injury, thus making DeLeon ineligible for consecutive sentencing.  Again, the Supreme Court of Illinois reasonably applied *Strickland* in finding that DeLeon's counsel's performance did not fall below an objective standard.  DeLeon was resentenced because his earlier life sentence for the murder of Juana was found to violate the single-subject rule of the Illinois Constitution.  *See DeLeon*, 882 N.E.2d at 1009.  The thirty-year sentence for the attempted murder of Sanchez was not found to be in error.  Moreover, as discussed below, the trial court previously found that Sanchez suffered a severe bodily injury, thus warranting the imposition of consecutive sentences.  Consequently, DeLeon's counsel reasonably could have concluded that any argument challenging whether Sanchez suffered a severe bodily injury was futile in light of the court's previous findings and the mandate on remand.  As such, any challenge to that finding would not have resulted in a different outcome

The Supreme Court of Illinois reasonably applied *Strickland* to DeLeon's claims of ineffective assistance of counsel at resentencing.  As such, the Court denies DeLeon's second habeas claim.

### III.    Trial Court's Failure to Allow Access to IDOC Records

Third, DeLeon claims that his Fifth and Sixth Amendment rights were violated when the trial court made an in camera inspection of his IDOC records for mitigating evidence and then refused to allow defense counsel independent access to the records.

This claim is not cognizable on federal habeas review because the underlying state court ruling rests on an independent and adequate state law ground.  *See Perruquet*, 390 F.3d at 514.

Supreme Court of Illinois Rule 415(e) states, "Material excised pursuant to judicial order shall be sealed, impounded and preserved in the records of the court, to be made available to the reviewing court in the event of an appeal." 134 Ill.2d R. 415(e). Similarly, Rule 415(f) states, "If the court enters an order granting relief following a showing in camera, the entire record of such showing shall be sealed, impounded, and preserved in the records of the court, to be made available to the reviewing court in the event of an appeal." 134 Ill.2d R. 415(f). In the absence of a complete record on appeal, the Supreme Court of Illinois has held that "it will be presumed that the order entered by the circuit court was in conformity with the law and had a sufficient factual basis." *DeLeon*, 882 N.E.2d at 1010. Moreover, "the burden to assure compliance" with procedural rules rests with the complaining party and "absent a request for such compliance, any deficiency in the record will be attributable to that party." *Id*.

Here, DeLeon failed to request to preserve the records after the trial court's in camera inspection and, as such, the Supreme Court of Illinois had an incomplete record to review. The Supreme Court of Illinois reasonably applied an independent and adequate state law ground—its procedural rules—to find that DeLeon's failure to preserve the record on appeal warranted the presumption that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *See People v. Coates*, 488 N.E.2d 247, 249-50 (Ill. 1985) (rev'd on other grounds, *People v. Schott*, 582 N.E.2d 690 (Ill. 1991) (finding nothing for the court to review where defendant failed to request that records be preserved after an in camera review). Indeed, DeLeon's counsel did not object to the trial court's decision to review the records outside of the presence of counsel and DeLeon did not raise his IDOC file as an issue in his initial appeal or motion to reconsider his sentence. Moreover, the trial court's in camera review of DeLeon's confidential

17

IDOC records was in accordance with Illinois precedent. *See Mullins v. People*, 341 N.E.2d 140 (Ill. App. Ct. 1976) (dismissing as moot a challenge to a trial court's decision to conduct an in camera review of confidential IDOC records).

Therefore, federal habeas review of this claim is barred because the state court relied upon an adequate state law ground—state procedural rules—as an independent basis for its resolution of the claim. *See Willis*, 8 F.3d at 561. DeLeon fails to demonstrate cause for his failure to comply with the procedural rules; his claim that he never had access to the records to preserve does not negate his obligation to object or move to preserve the records at trial. *See Howard*, 185 F.3d at 726; *Coates*, 488 N.E.2d at 249-50. As such, DeLeon cannot demonstrate cause and prejudice and the Court denies his third habeas claim.

## IV. Ineffective Assistance of Trial Counsel

Fourth, DeLeon claims that his counsel at trial was ineffective in several respects.

### A. Advised Not to Testify at Trial

DeLeon claims that his trial counsel was ineffective because he advised DeLeon not to testify at his trial. This claim was only first raised in his successive postconviction petition and is thus procedurally defaulted. In Illinois, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3. Indeed, "[w]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009); *see also Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground.").

The Illinois appellate court, the last court to rule on the merits of this claim, summarily affirmed the trial court's judgment of dismissal on DeLeon's successive postconviction petition. *See People v. DeLeon*, No. 1-09-0561 (Ill. App. Ct. May 18, 2010) (unpublished). Where, as here, it is unclear from the face of the opinion on what basis the state court disposed of this claim, the Court will "look to the nature of the disposition and the surrounding circumstances to determine whether the state court relied on an independent and adequate state law ground in disposing of the claim." *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009).

Here, those circumstances include DeLeon's appellate counsel's motion for leave to withdraw pursuant to *Pennsylvania v. Finley*. 481 U.S. at 551; *see Woods*, 589 F.3d at 376. The *Finley* motion was filed before DeLeon's appeal of the trial court's dismissal of his successive postconviction petition. In his motion, DeLeon's appellate counsel moved to withdraw because DeLeon failed to allege cause for and prejudice from failing to raise his ineffective assistance of counsel claims in his direct appeal of his new sentence or in his first postconviction petition. (Resp.'s Rule 5 Exs., Ex. U.) The Illinois appellate court, after reviewing the record, DeLeon's counsel's *Finley* motion, and DeLeon's response, granted the *Finley* motion and affirmed the trial court's judgment. *See DeLeon*, No. 1-09-0561 at 3. Because these underlying circumstances show that the Illinois appellate court relied on the independent and adequate state-law ground of waiver when addressing this claim, it is procedurally defaulted.

Even if this claim was not procedurally defaulted, it is meritless. While an accused has a fundamental right to "present his own version of events in his own words," *Rock v. Arkansas*, 483 U.S. 44, 52 (1987), this right can be waived by a "knowing and intelligent waiver." *Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973). At trial, DeLeon waived his right to testify during the

following discussion with the trial judge:

THE COURT: Mr. DeLeon, sir, you understand that your right to testify is your right and no one elses [sic] right and only you, only you, can give up that right. You understand that?

DELEON: Yes.

THE COURT: Sir, you have had an opportunity to discuss your decision—it's your decision, not to testify, is that correct, sir?

DELEON: Yes.

THE COURT: You have had an opportunity to discuss that decision with your lawyer?

DELEON: Yes.

THE COURT: Have you discussed it with your family members?

DELEON: Yes.

THE COURT: And after those discussions, you have come to this conclusion not to testify of your own free will?

DELEON: Yes, your Honor.

THE COURT: You have not been threatened or intimidated in any way? This is your own decision?

DELEON: Yes, your Honor.

(Resp.'s Rule 5 Exs., Ex. Y at 72-73.) DeLeon's affirmative answer when asked whether his decision not to testify was his own out of his own free will constituted a knowing and intelligent waiver of his right to testify. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1167 (7th Cir. 2008). Therefore, counsel was not ineffective in advising DeLeon not to testify at trial.

### B. Failed to Challenge Impermissible Double-Enhancement of Sentence

DeLeon claims that his trial counsel was ineffective when he failed to argue that the victim's

age was both an element of first-degree murder and an aggravating factor in his sentence, thus constituting an impermissible double-enhancement. This ineffective assistance claim is procedurally defaulted as it too was not raised in his direct appeal nor in his first postconviction petition. DeLeon likewise failed to show cause for and prejudice from the default.

Procedural default aside, this claim is also meritless. In Illinois, a victim's age is not an element of first-degree murder. *See* 720 ILCS 5/9-1(a)(1)–(3). Here, the victim's age was only taken into account as an aggravating factor during DeLeon's resentencing. *See* 730 ILCS 5/5-5-3.2(b)(3) (allowing a sentencing court to impose an extended-term sentence when a defendant is convicted of any felony committed against a person under twelve years of age at the time of the offense). Because this argument is meritless, DeLeon cannot demonstrate that the outcome would have been different. As such, DeLeon's counsel was not ineffective for failing to raise it at his resentencing.

### C.     Failed to Challenge Imposition of Consecutive Sentences

DeLeon argues that his trial counsel was ineffective for failing to challenge the imposition of consecutive prison sentences by arguing that Sanchez did not suffer a severe bodily injury. This claim appears to reiterate his previous habeas claim that his resentencing counsel was ineffective. Because that claim was properly raised in his first postconviction petition, it is not procedurally defaulted. It is, however, meritless for the reasons discussed above in the Court's analysis of his second habeas claim and below in the Court's analysis of DeLeon's sixth habeas claim. Accordingly, DeLeon cannot demonstrate that the outcome would have been different had his counsel challenged the imposition of consecutive sentences.

DeLeon's ineffective assistance of trial counsel claims are procedurally defaulted, meritless, or both. As such, the Court denies his fourth habeas claim.

## V.     Ineffective Assistance of Appellate Counsel

Fifth, DeLeon argues that his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness.  To the extent that he claims that his appellate counsel on his direct appeal of his original sentence was ineffective, this claim is procedurally defaulted for the same reasons discussed above since he failed to raise this argument in his first postconviction petition.  (Resp.'s Rule 5 Exs., Ex. D.)

It is more likely that DeLeon claims that his appellate counsel on his direct appeal of his resentencing was ineffective for not challenging his trial counsel's failure to contest (1) the imposition of consecutive sentences based on Sanchez's severe bodily injury; and (2) his trial counsel's failure to challenge the impermissible double-enhancement of his sentence.  These claims were properly raised in DeLeon's successive postconviction petition.  (Resp.'s Rule 5 Exs., Ex. S.)  Moreover, unlike the ineffective assistance of trial counsel claims discussed above, they do not appear to be addressed in his appellate counsel's *Finley* motion and are thus not within the scope of the Illinois appellate court's order affirming the dismissal of his successive postconviction petition.  (Resp.'s Rule 5 Exs., Exs. T, U.)  They are, however, meritless.  As discussed above in the analysis of DeLeon's fourth habeas claim, DeLeon's trial counsel was not ineffective for failing to contest the consecutive sentences and double enhancements because these arguments would not have resulted in a different outcome.  Therefore, DeLeon's appellate counsel could not have fallen below *Strickland*'s objective standard of performance for failing to make these two arguments on direct appeal of DeLeon's resentencing.  Accordingly, the Court denies DeLeon's fifth habeas claim.

## VI.    Impermissible Consecutive Sentences Because Sanchez Did Not Suffer a Severe Bodily Injury

Sixth, DeLeon argues that the imposition of consecutive sentences violated his Sixth and Fourteenth Amendment rights because Sanchez's gunshot wound was not sufficient to constitute a severe bodily injury. This claim is not cognizable on federal habeas review because the state court ruling against it rests on an independent and adequate state-law ground. *See Perruquet*, 390 F.3d at 514. DeLeon was convicted of attempted first-degree murder for shooting Sanchez, a Class X felony in Illinois. *See* 720 ILCS 5/8-4(c)(1). In Illinois, the trial court must impose consecutive prison sentences if "[o]ne of the offenses for which the defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1). Here, DeLeon shot Sanchez in the chest from close range and the trial court reasonably found that that constituted a severe bodily injury under Illinois law even though Sanchez was able to continue driving. *See People v. Johnson*, 594 N.E.2d 253 (Ill. 1992) (finding severe bodily injury where victim, who was shot in the shoulder, walked out of the apartment where the shooting occurred, flagged down a passing motorist, told the driver there had been a robbery and a shooting, and had the motorist drive him to a hospital). Both the appellate court and Supreme Court of Illinois affirmed the trial court's finding of severe bodily injury. *See DeLeon*, 882 N.E.2d at 1004-05 (noting first that what constitutes "severe bodily injury" is a "question properly left to the fact finder" and then finding "the evidence . . . more than sufficient to support the trial court's finding that Sanchez sustained a 'severe bodily injury.'").

Moreover, habeas corpus relief is available only to a person in custody in violation of the United States Constitution or laws or treaties of the United States, and an error in the application of

state sentencing rules does not present a cognizable claim for federal habeas relief. *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *see, e.g., United States ex rel. Gonzalez v. Pierce*, No. 05 C 0084, 2007 WL 2386714 at *5 (N.D. Ill. Aug. 15, 2007 (Gettleman, J.) ("The determination of 'severe bodily harm' versus regular 'bodily harm' is a state law question. Consequently petitioner's claim is not cognizable under federal habeas corpus review."). Accordingly, the Court denies DeLeon's sixth habeas claim.

## VII. Impermissible Sentencing Because the Victim's Age Was Both an Element of First-Degree Murder and a Statutory Aggravating Factor

Finally, DeLeon argues that his sentence for first-degree murder violated his Sixth and Fourteenth Amendment rights because the victim's age was both an element of first-degree murder as well as a statutory aggravating factor. Like his sixth habeas claim discussed above, this claim is not cognizable on federal habeas review because an error in the application of state sentencing rules does not present a cognizable claim for federal habeas relief. *See Dellinger*, 301 F.3d at 764; *see, e.g., Pierce*, 2007 WL 2386714 at *5. Moreover, as addressed above in the analysis of DeLeon's fourth habeas claim, this claim is meritless. The victim's age was not an element of first-degree murder and was only taken into account during DeLeon's resentencing pursuant to 730 ILCS 5/5-5-3.2(b)(3).

To the extent that DeLeon claims 730 ILCS 5/5-5-3.2(b)(3) was invalidated by *Apprendi v. N.J.*, 530 U.S. 466 (2000), that claim is unavailing because the resentencing court—which was also the finder of fact in DeLeon's bench trial—specifically found that "there was credible evidence at [DeLeon's bench] trial and at [his first sentencing hearing] that the victim was seven years old at the time she died as a result of [DeLeon's] conduct." *DeLeon*, 1-99-0028 at 9. The trial court also

found that there was no cross examination as to the victim's age and that her age "went in" as evidence during the bench trial. (Resp.'s Rule 5 Exs., Ex. A at 127.) Therefore, the resentencing court properly enhanced DeLeon's sentence with facts that were found by the fact-finder beyond a reasonable doubt during the bench trial. *See Apprendi*, 530 U.S. at 466. Accordingly, the Court denies DeLeon's seventh habeas claim.

## VIII.   Certificate of Appealability

"[U]ntil a [certificate of appealability] has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003). A court may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal citation omitted). As discussed above, the Court denies the seven constitutional claims raised in DeLeon's habeas petition. No reasonable jurist could conclude that he is being held in violation of the United States Constitution and that habeas relief should be granted. The Court therefore denies a certificate of appealability.

## CONCLUSION AND ORDER

For the reasons stated, the Court denies DeLeon's petition for writ of habeas corpus.

Although DeLeon requests an evidentiary hearing in his petition, there are no grounds under 28 U.S.C. § 2254(e)(2) to support such a hearing and the Court denies that request as well.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: